IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| LINDA PETERSON | : | Civil Action No. |
| | : | 7:07-CR-22-HL |
| Defendant. | : | |
| | : | |

# ORDER

This matter is before the Court on Defendant's Renewed Motion for Judgment of Acquittal and in the Alternative Motion for New Trial (Doc. 97). After consideration of the record and the briefs of the parties, and as more fully set forth below, Defendant's Motion for Judgment of Acquittal is granted and her Motion for New Trial is conditionally granted.

**I.   BACKGROUND**

Defendant, Linda C. Peterson, was charged in a two-count Indictment (Doc. 1) returned by a grand jury on September 29, 2007. In Count One Peterson was charged with perjury, in violation of 18 U.S.C. § 1623, and in Count Two she was charged with making false statements, in violation of 18 U.S.C. § 1001(a)(2). A Superseding Indictment (Doc. 22) was returned on March 11, 2008, which added Count Three, charging conspiracy to commit extortion by a public official, in violation

1

of 18 U.S.C. § 1951(a).

Before trial, Peterson moved the Court to dismiss Counts Two and Three and to suppress her testimony before the grand jury. The Court denied all three motions in an Order entered June 2, 2008 (Doc. 52). The case was tried to a jury beginning July 7, 2008. At the close of the Government's case, Peterson moved for a Rule 29 judgment of acquittal; the Court reserved ruling on the Motion. At the close of all of the evidence, Peterson renewed her Motion for Judgment of Acquittal; the Court again reserved ruling on the Motion. On July 14, 2008, the jury returned a verdict of guilty as to Counts One and Two, and not guilty as to Count Three. Peterson timely filed the Motion at issue here, once again renewing her Motion for Judgment of Acquittal and moving for a new trial. The Court will discuss the issues of acquittal and new trial separately.

## II.  DISCUSSION

### A. Request for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that the court, on motion of a defendant or on its own motion, "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In deciding whether the evidence is sufficient, the court must "'determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a

reasonable doubt.'" United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997) (quoting United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)). Defendant has moved for a judgment of acquittal on Counts One and Two. The Court will first address the sufficiency of the evidence as to Count One.

### 1. Count One

Defendant was indicted in Count One for violating 18 U.S.C. § 1623(a). The Superseding Indictment labels the offense as "perjury," likely because the offense falls under the perjury chapter, but the Code labels the offense as one for "false declarations before the grand jury or court." Specifically, § 1623(a) states, in pertinent part:

> Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1623(a). In order to maintain a conviction under § 1623(a), the Government's evidence must establish four elements beyond a reasonable doubt: the declaration was (1) knowingly made, (2) false when made, (3) material, and (4) made under oath. See, e.g., United States v. Gilbert, Case No. 06-15860, 2008 WL 351387, *1 (11th Cir. Feb. 11, 2008) (citing United States v. Cross, 638 F.2d 1375, 1378 (5th Cir. Mar. 1981)[1]). Count One charges that Defendant violated this

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

statute when she testified under oath before the grand jury that she never suggested to a criminal defendant that he seek a bond from her father, when "in truth and in fact . . . she had suggested that defendant JET hire her father, HC, as a bondsman in order to post the $50,000 bond she had just set for defendant Tucker." (Sup. Indict. at 3.)  Defendant attacks her conviction on this Count on three grounds:  (1) insufficient evidence of falsity; (2) insufficient evidence of knowledge; and (3) insufficient evidence of materiality.  In the Court's view, the Government's case breaks down on the element of materiality.

Materiality is an essential element in a prosecution for making false statements to the grand jury.  Johnson v. United States, 520 U.S. 461, 465 (1997); 18 U.S.C. § 1623.  "'A statement is material if it is capable of influencing the grand jury's investigation.  To the extent that truthful answers might assist the grand jury's investigation, false statements are material notwithstanding an abundance of evidence facilitating access to the truth.'" United States v. Swindall, 971 F.2d 1531, 1554-55 (11th Cir. 1992) (quoting United States v. Corbin, 734 F.2d 643, 654 (11th Cir. 1984)).

Materiality may be proved in a variety of ways.  United States v. Cosby, 601 F.2d 754 (5th Cir. 1979); United States v. Bell, 623 F.2d 1132 (5th Cir. 1980).  The Government may introduce the full transcript of the grand jury proceedings or it may present the testimony of anyone who witnessed the grand jury proceedings.  Cosby, 601 F.2d at 756; Bell, 623 F.2d at 1135.  Though these are not the only methods of

proving materiality, this Circuit has indicated that they are the preferred ones. Bell, 623 F.2d at 1135.

In United States v. Cosby the former Fifth Circuit addressed a defendant's contention that the Government failed to prove that his alleged false statements were material to the grand jury's investigation. The defendant, Elijah Cosby, testified before a grand jury that was allegedly investigating police corruption in Carrollton, Georgia. Cosby, 601 F.2d at 756. During his testimony, Cosby falsely testified that he had never delivered non-tax-paid liquor, never possessed quantities of marijuana in excess of one pound, never used, possessed, or distributed controlled substances other than marijuana, and never obtained marijuana at the Carrollton Police Department more than two times. Id. Based on his false testimony, Cosby was indicted for making false statements to a grand jury and subsequently convicted. Id.

Cosby appealed his conviction on the ground that the Government failed to prove that his false statements were material to the grand jury's investigation. Cosby, 601 F.2d at 756. The evidence of materiality consisted of the testimony of an F.B.I. agent who was working with the grand jury, the testimony of a witness who appeared before the grand jury, and the perjury indictment itself, which recited the subject matter of the grand jury's inquiry and the questions asked of the defendant. Id. The former Fifth Circuit concluded that this evidence was insufficient and reversed his conviction. Id. at 757. The court reasoned that the F.B.I. agent's testimony did not establish materiality because an F.B.I. agent does not control,

direct, or participate in grand jury decisions. Id. at 758. Moreover, the agent's statements about his investigation were insufficient as they merely attested to "his own purposes and actions, not to the nature, scope or extent of the grand jury's inquiry." Id. As to the testimony of the grand jury witness, the court rejected the Government's contention that the witness knew the scope of the investigation. Id. at 757. The court reasoned that there was no evidence that the witness knew the scope of the investigation, but even assuming the witness did know, the Government did not demonstrate the basis for the witness's knowledge. Id. Last, the court concluded that the perjury indictment was insufficient to establish materiality because "an indictment is not self-proving as to any of its charges." Id.

A year later the former Fifth Circuit decided United States v. Bell, which also involved a defendant's contention that the Government's proof of materiality was insufficient to sustain a conviction. In Bell a grand jury was investigating allegations that Catherine and Gary Greene were smuggling illegal aliens into the United States. Bell, 623 F.2d at 1134. Pursuant to this investigation, the defendant, Bell, was called before the grand jury as he had previously worked as a private investigator for the Greenes. Id. Bell was subsequently indicted for two counts of making false statements before the grand jury and seven counts of conspiring with the Greenes to smuggle illegal aliens. Id. The perjury counts were tried separately from the conspiracy counts, and Bell was convicted of the perjury counts. Id. Bell appealed his conviction. Id.

6

On appeal, Bell contended that he was entitled to a judgment of acquittal on the first perjury count because the Government failed to prove the materiality of the false statement. Id. The first perjury count charged that Bell falsely testified that he did not know Catherine Greene. Id. To establish the materiality of Bell's false testimony, the Government relied on the perjury indictment, excerpts of Bell's grand jury testimony, the testimony of an F.B.I. agent, the testimony of the Assistant United States Attorney who conducted the questioning of Bell, and the indictments that charged Bell with conspiring to smuggle illegal aliens into the United States. Id. at 1135.

The court addressed the sufficiency of each of these pieces of evidence, eventually concluding that only the conspiracy indictment was sufficient to establish materiality. Id. The court first addressed the perjury indictment and concluded that it told the court nothing of the scope of the grand jury's investigation as it merely recited Bell's grand jury testimony. Id. For this same reason, the excerpts of Bell's grand jury testimony were insufficient to establish materiality. Id. Next, citing Cosby, the court concluded that the F.B.I. agent's testimony was not sufficient because it merely stated the scope of his investigation, not the grand jury's. Id. Last, the AUSA's testimony was not sufficient because it consisted only of the bare assertion that Catherine Greene was one of the targets of the grand jury's investigation. Id.

After the court deemed this evidence insufficient, the court addressed the conspiracy indictments, which were admitted into evidence. Id. The indictments

7

charged that Bell conspired with Catherine Greene to smuggle illegal aliens. Id. According to the court, this allegation demonstrated that the grand jury was investigating Catherine Greene's smuggling activities. Id. As a result, Bell's false assertion that he did not know her was material because it deprived the grand jury of information that could have assisted its investigation. Id.

To establish the materiality element in this case, the Government apparently relies on the testimony of F.B.I. agent Tony Smith, who was investigating allegations of official corruption in the Alapaha Judicial Circuit, the transcript of Peterson's grand jury testimony, and the Superseding Indictment against Peterson. For the reasons set forth below, the Court deems this evidence insufficient to establish materiality.

First, Agent Smith's testimony that he was investigating alleged official corruption in the Alapaha Judicial Circuit attests only the scope of his investigation, not the grand jury's. See Bell, 623 F.2d at 1135; Cosby, 601 F.2d at 758. As a result, his testimony proves nothing about materiality.

Next, Peterson's grand jury testimony does not establish the scope of the grand jury's inquiry; it only recites the questions and answers. See Bell, 623 F.2d at 1135 (concluding that mere recitation of questions and answers does not establish materiality). A question is not material just because the Government asked it. If that were the standard, the materiality element would be rendered meaningless as the Government would be able to establish the scope of the grand jury's inquiry simply by deciding which questions to ask. This is not to say that a defendant's grand jury

testimony can never establish the scope of the inquiry, but in this case, this Court concludes that a reasonable jury could not decide the scope of the grand jury's inquiry simply by looking to the transcript of Peterson's grand jury testimony. For this reason alone, Peterson's grand jury testimony does not establish materiality.

In addition, assuming for the purpose of argument that Peterson's testimony does establish the scope of the grand jury's inquiry, her testimony does not establish that her alleged false statements were within the scope of that inquiry. Peterson's alleged false testimony came in response to several questions that asked whether she had ever recommended that a criminal defendant seek a bond from her father. The testimony, which came at the very end of her appearance before the grand jury, comprises approximately one page of the thirty-seven page transcript and has no relation to the other thirty-six pages of testimony. A significant portion of the transcript consists of questions about Judge Blitch. In particular, approximately thirteen pages consist of testimony about the Ted Smith probable cause hearing, which served as the basis for the charge in Count Three that Peterson conspired with Blitch to extort money from Smith. Whether Peterson had recommended her father as a bondsman is totally unrelated to the inquiry of the Smith matter. The rest of the transcript consists of other questions that have no relation to Peterson's alleged false testimony. Thus, to the extent Peterson's grand jury testimony establishes the scope of the grand jury's inquiry, the Court concludes that a reasonable jury could not conclude beyond a reasonable doubt that the alleged false testimony was within the

scope of that inquiry.

Last, the Superseding Indictment is not evidence of materiality. The Government appears to rely on the Superseding Indictment's recitation that the purpose of the grand jury's investigation was to determine whether judicial officials in the Alapaha Circuit were using their positions in violation of federal law. But an indictment is not self-proving as to any of its charges, Cosby, 601 F.2d at 757, therefore, this allegation cannot be used to prove the scope of the grand jury's inquiry.

Also, the charge in Count Three is not evidence of materiality. As is clear from Bell, indictments returned by a grand jury can be used as evidence of the scope of the grand jury's inquiry. In this case, however, the Superseding Indictment was not introduced as evidence, and the Court charged the jury that it was not evidence. Moreover, the alleged false statements were not material to the charge in Count Three. Count Three charged Peterson with conspiring with Judge Blitch to extort money from Ted Smith. This charge had no connection to Peterson's alleged false assertion that she had never recommended her father as a bondsman. As a result, the Superseding Indictment is not evidence of materiality.

For these reasons, the Government failed to establish the materiality of the false statements charged in Count One. Peterson's Motion for Judgment of Acquittal on Count One is granted.

### 2. Count Two

Count Two charges Peterson with making false statements in violation of 18 U.S.C. § 1001(a)(2). It alleges that Peterson "falsely stated to Special Agents of the Federal Bureau of Investigation that she had not asked employees of the Clinch County Sheriff's Department what steps needed to be taken in order for her father to write bonds." (Sup. Indict. at 4). At trial, the Government introduced the testimony of two employees of the Clinch Sheriff's Department, Sissy Suggs, and Patti Herrin, who both testified that after the Tucker bond hearing Peterson said that she should get her father to sign Tucker's bond. But there was no evidence that Peterson asked sheriff's department employees what steps needed to be taken in order to get her father to sign Tucker's bond. Accordingly, Peterson contends that the Government failed to prove the falsity of the statement charged in Count Two.

In response, the Government characterizes Peterson's contention as a variance argument. According to the Government, if there was a variance, Peterson was not prejudiced as she was "squarely on notice as to the subject matter of the false statement being alleged." (Gov't.'s Resp. at 18.)

A variance exists when the proof at trial deviates from the allegations in the indictment but the essential elements of the offense are the same. United States v. Young, 39 F.3d 1561, 1566 (11th Cir. 1994). Not every variance is fatal to an indictment. Id. A variance is fatal only if it was material and substantially prejudiced the defendant. Id.

Both Peterson and the Government focus on the testimony of Suggs and

11

Herrin in support of their respective positions.  The parties seem to be under the mistaken assumption that the false statement consisted of the words that Peterson uttered to Suggs and Herrin, and therefore, they focus on the testimony of Suggs and Herrin and how their testimony differs from the statement charged in Count Two.  But Count Two does not charge that Peterson violated the law by making a statement to Suggs and Herrin; it charges Peterson with lying to the F.B.I. about a statement that she made to Suggs and Herrin.  Thus, the starting point of this inquiry is the statements that Peterson made to the F.B.I.

Peterson made the alleged false statement during an interview with two F.B.I. agents, Tony Smith and Jim Grady, and an Assistant United States Attorney, Leah McEwen.  During the interview, Peterson was asked about various issues, including the Tucker bond hearing and whether she talked to sheriff's department employees about getting her father to sign a bond.  But none of the questions asked of Peterson elicited a response that mirrors the statement charged in Count Two.  The closest that anybody came to eliciting such a statement was when Leah McEwen asked Peterson whether Suggs knew what happened during the Tucker bond hearing because "after you held the hearing on this Tucker fellow you went over there and said what would I have do to [sic] get my dad to sign this bond?"  (Gov't.'s Ex. 5B at 32.)  This question does not ask Peterson whether she asked Suggs what she needed to do to get her father to sign Tucker's bond.  Instead, it asks Peterson whether Suggs knew about what happened during the Tucker hearing <u>because</u>

12

Peterson asked Suggs what she needed to do to get her father to sign Tucker's bond. Thus, Peterson's answer of "no" to this question cannot be construed as a statement that Peterson did not ask Suggs what needed to be done to get her father to sign a bond.[2]

At other times throughout the interview Peterson asserts that she did not ask anybody at the sheriff's department whether her father could sign Tucker's bond. (Gov't.'s Ex. 5B at 34 & 50.) These assertions, though similar to the statement charged in Count Two, are not identical. Also, several times throughout the interview Peterson states that she did not talk to anybody at the Sheriff's Department about her father signing bonds. (Gov't.'s Ex. 5B at 26, 27, & 34). These statements concern the same subject matter as the alleged false statement, but they do not have the same meaning. Talking to somebody about your father signing a bond is not the same as asking them what needs to be done so that your father can actually sign bonds.

The Government's proof at trial highlighted the deficiency with Count Two's charging language. Suggs testified that after the Tucker hearing, Peterson stated that she told Tucker that she would get her dad to sign his bond. (Tr. Trans. Vol. II

---

[2]Not only does the question not elicit the statement that is alleged to be false, but there is no evidence that Peterson ever asked Suggs what she needed to do to get her father to sign the bond. Suggs testified only that Peterson said she should get her father to sign it. Thus, Peterson's response to this question cannot serve as the basis for the false statement charge for two reasons: it does not elicit the statement that is alleged to be false, but even if it did, her response was not proven to be false.

13

at 95.) Herrin broadly testified that Peterson stated she ought to get her dad to do Tucker's bond. (Id. at 109.) But neither witness testified that Peterson asked them what steps needed to be taken to get her father on the bond. In fact, Herrin specifically stated on cross-examination that Peterson did not ask this question. (Id. at 114.) As a result, assuming for the purpose of argument that Count Two charges that Peterson falsely stated to the F.B.I. that she did not ask whether her father could sign Tucker's bond, there was no evidence that such a statement was false.

Suggs's and Herrin's testimony does, however, establish the falsity of a statement that Peterson made during the interview. Their testimony establishes that Peterson falsely stated that she did not talk about her father signing Tucker's bond. (Gov't.'s Ex. 5B at 34.) But Count Two does not charge that this statement was false. Thus, at trial, the Government proved the falsity of a statement not charged in the Superseding Indictment, but it failed to prove that Peterson made the statement that was actually charged or that it was false.

The Government does not see any problem with its failure to provide Peterson notice of which statements she was indicted for making. Under the Government's view, a defendant is not prejudiced so long as the defendant has notice of the "subject matter" of the alleged false statement. Presumably, at that point a defendant should be prepared to defend against charges that one, all, or some of the statements that concern that particular subject matter are false. The Government's position is incorrect.

One of the central purposes of an indictment is to provide the defendant with notice of the charges against her so that she can prepare an adequate defense. See United States v. Briggs, 514 F.2d 794, 800 (5th Cir. 1975). When there is a variance between the charges in an indictment and proof at trial, a defendant may be deprived of her right to fair notice of the charges against her. United States v. Glinton, 154 F.3d 1245, 1251 (11th Cir. 1998). In a false statement case, it is especially important that the indictment adequately identify the statement that is alleged to be false so that the defendant can prepare a defense. See United States v. Lambert, 501 F.2d 943, 948 (5th Cir. 1974). As a result, in a false statement case "the extent or range by which proof may vary from indictment before prejudice arises is much narrower." Id. at 948.

In United States v. Lambert the former Fifth Circuit applied the variance standard in a false statement case. In that case, the defendant, Fred Lambert, was indicted for making false statements to the FBI based on a written statement he provided to the FBI. Id. at 945. In the written statement, Lambert claimed that two Tampa, Florida, police officers violated his civil rights by physically mistreating him and falsely arresting him. Id. After the FBI's investigation revealed that Lambert's allegations were false, Lambert was indicted for making false statements in violation of 18 U.S.C. § 1001. Id. The indictment charged in the following language:

> "Fred Lambert stated and represented that he had been severely beaten and subjected to illegal and unnecessary punishment by two members of the Tampa Police Department, Tampa, Florida, in violation

15

> of his Civil Rights....[when]...in truth and in fact, as (Lambert) then knew, he had not been severely beaten and he had not been subjected to illegal and unnecessary punishment and his Civil Rights had not been violated by the two members of the Tampa Police Department."

Id. at 947. Lambert was convicted of this charge and appealed on the ground that there was a fatal variance between the charge in the indictment and proof at trial. Id.

On appeal, the Government conceded that there was a variance. Although Lambert claimed in his statement that the officers hit him on the head, face, and arms with their slapjacks, nowhere in Lambert's written statement did he claim that he was "severely beaten" or that he had been "subjected to illegal and unnecessary punishment." Id. Because there was no dispute that there was a variance, the former Fifth Circuit addressed whether the variance was grounds for reversal.

The court acknowledged that not every variance is fatal but noted that in a false statement case, a variance is more likely to result in prejudice. See id. at 948. The court reasoned that the permissible range of proof is narrower because false statement cases involve a threefold inquiry: "Did the defendant say what the indictment charges him with saying? If he did, does it depart from the truth? Was it material?" Id. Because the starting point in this inquiry is always the statement, a defendant is hampered in preparing a defense if he is not aware of what he is claimed to have said. Id.

Applying this standard to the facts before it, the former Fifth Circuit had little

16

difficulty concluding that the range of proof offered by the Government was too wide. Id. The court reasoned that the use of the phrases "severe beating" and "illegal and unnecessary punishment" was not a mere substitution of words; it was a prosecutorial effort to "summarize and restate either the overall tenor of the entire statement signed by defendant or the gist of selected but unidentified portions extracted from it." Id. Without knowing which statements the prosecution alleged were false, Lambert was prejudiced in his ability to prepare an adequate defense. Id. As a result, the Fifth Circuit reversed Lambert's conviction. Id. at 950.

In this case, as in Lambert, the range of proof was too wide. Count Two charges that Peterson made a particular statement, but she never uttered the exact words that are charged. At several points throughout the interview, Peterson was asked various questions that related to the issue of whether she had talked to anybody about her father signing a bond. These questions were all phrased in different ways, but none asked Peterson whether she asked employees of the Clinch County Sheriff's Department what steps needed to be taken in order for her father to write bonds. As in Lambert, the words used by the Government in Count Two seem to be nothing more than prosecutorial efforts to label a specific category of questions–questions that asked Peterson whether she talked to Suggs and Herrin about her father signing bonds–without actually identifying a specific question or statement. This conclusion is bolstered by the fact that at trial, the Government did not prove that Peterson ever asked any sheriff's department employees what needed

17

to be done to get her father to sign a bond. Instead, the Government, relying on its broad characterization of a group of questions that it asked Peterson in the F.B.I. interview, proved the falsity of a specific statement that was not charged in Count Two–i.e., Peterson's assertion that she did not talk to anybody about her father signing a bond. But Peterson was not indicted for making the statement that the Government ultimately proved was false, and Count Two did not provide her sufficient notice that the Government would attempt to secure a conviction based on an uncharged statement. Contrary to the Government's assertion, a defendant in a false statement case is not sufficiently apprised of the charge against her simply because the indictment identifies the general subject matter to which the alleged false statement relates. As the court noted in Lambert, a defendant can only prepare an adequate defense if she knows the exact statement that is alleged to be false. It is fundamentally unfair for the Government to charge that a defendant made a particular false statement but then prove at trial that an entirely different statement is false. This unfairness is multiplied when the charged statement is not composed of the words of the defendant but of the prosecutor's recharacterization of what the defendant said. Peterson's Motion for Judgment of Acquittal on Count Two is granted.

### B. Request for New Trial

Peterson has also requested a new trial in the event that the Court denied her Motion for Judgment of Acquittal. Though this Court granted Peterson's Motion for

Judgment of Acquittal, it is still required to "conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d)(1).

A district court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. Peterson contends that she is entitled to a new trial for two reasons: first, the evidence does not support the jury's verdict; and second, prosecutorial misconduct.

The standard for a motion for new trial based on the weight of the evidence is very different than the standard for a motion for judgment of acquittal. "On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of witnesses." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). "If the court concludes that, 'despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.'" Id. (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980).

In this case, the Court has already determined that as to Count One there was insufficient evidence of materiality. For the same reasons that the Court made that determination, the Court concludes that under the motion for new trial standard, the

19

jury's finding of materiality was against the weight of the evidence. Thus, Peterson's Motion for New Trial on Count One is conditionally granted.

As to Count Two, the Court granted Peterson's Motion for Judgment of Acquittal on the ground that there was a variance between charge and proof. Specifically, the Court determined that the Government did not prove that Peterson made the statement charged in Count Two or that the charged statement was false. Because there was no evidence that the charged statement was false, the Court concludes that under the motion for new trial standard, the jury's finding of falsity was against the weight of the evidence. Peterson's Motion for New Trial on Count Two is conditionally granted. The Court need not address Peterson's allegation of prosecutorial misconduct.

### III.  CONCLUSION

For the foregoing reasons, Peterson's Motion for Judgment of Acquittal is granted and her Motion for New Trial is conditionally granted.

**SO ORDERED**, this the 3rd day of November, 2008

*s/   Hugh Lawson*
**HUGH LAWSON, Judge**

dhc